# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAMELA DAWN PLANK | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | NO. 12-4144 |
| Defendant | | |

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS                    November 18, 2013
CHIEF UNITED STATES MAGISTRATE JUDGE

Pamela Dawn Plank ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g),

1383(c)(3) of the final decision of the Commissioner of the Social Security Administration

("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act ("the Act").  Plaintiff has filed a request for review, the Commissioner has

responded to it and Plaintiff has filed a reply brief.  This case was referred to the undersigned by the

Honorable Paul S. Diamond, under the authority of 28 U.S.C. § 636(b)(1)(B), for preparation of a

report and recommendation.  For the reasons set forth below, it is recommended that Plaintiff's

request for review be GRANTED in part and DENIED in part and that the case be REMANDED to

the Commissioner for further proceedings consistent with this Report and Recommendation.

## I.    PROCEDURAL HISTORY[1]

On March 31, 2009, Plaintiff protectively applied for DIB benefits alleging disability, since

September 1, 2008, as a result of tennis elbow, carpel tunnel syndrome, a learning disability,

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review, Defendant's Response To Request for Review by Plaintiff, Plaintiff's Reply and the administrative record ("R."), including all exhibits thereto.

diabetes, bilateral wrist and arm nerve damage and pain, and borderline intellectual functioning. (R. 61, 145). After benefits were denied on October 2, 2009, (R. 61), Plaintiff requested and was granted an administrative hearing. (R. 69, 90-103). On October 20, 2010, Plaintiff, represented by counsel, and Vocational Expert ("VE") Dr. Paul Anderson, testified before Daniel Myers, Administrative Law Judge ("ALJ"). (R. 19-60). On November 9, 2010, ALJ Myers, using the sequential evaluation process for disability,[2] issued an unfavorable decision finding Plaintiff to be not disabled. (R. 18). Finally, on May 17, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R.1-5).

## II.  FACTUAL BACKGROUND

A.  Personal History

Plaintiff, born on October 7, 1965, was forty-two years old and a younger person[3] on September 1, 2008, the alleged onset date of her disability. (R. 166). She completed the twelfth

---

[2]The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 CFR § 404.1520(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 CFR § 404.1520(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 CFR § 404.1520(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 CFR § 404.1520(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 CFR § 404.1520(g).

[3]An individual under 50 years old is considered a " younger person." *See* 20 C.F.R. § 404.1563(c).

grade in a special education program.  (R. 36, 149).  She previously worked as an assembler and sander/assembler at a cabinet company.  (R. 136).  Plaintiff is married and lives in a ranch-style home with her husband and adult son.  (R. 28, 44, 47-48).

B.     Administrative Hearing Testimony

At the October 20, 2010 administrative hearing, Plaintiff testified that she has not worked after September 2008 because of diabetes, pain in her legs, hands and arms. (R. 26).  She also has pain in both of her wrists, forearms and elbows.  (R. 29).  When Plaintiff experiences throbbing pain in her legs, at least a couple days per week, she uses a heating pad and takes Tylenol to alleviate the pain.  (R. 30-31, 45).  Her diabetes is uncontrolled and often causes headaches, nausea, jitteriness and lightheadedness.  (R. 31-32, 42-43).  Plaintiff's headaches recur at least every other day; Plaintiff takes Tylenol or Aleve to treat them.  (R. 32).  Plaintiff has bilateral difficulty grasping objects; she is right-handed and her left hand is weaker than her right hand.  (R. 26-27).  Her fingers on both hands are often numb.  (R. 30).  Plaintiff has difficulty sleeping at night and must wear a brace on her wrists at night because her hands become numb when she sleeps.  (R. 46, 51).

Plaintiff's husband manages the household finances and her son handles the home maintenance.  (R. 28, 44-45, 50).  Plaintiff has difficulty performing household chores because her hands become numb; she often drops objects.  (R. 47, 51).  For example, Plaintiff had dropped a gallon of milk and dishes on the floor a week prior to the hearing.  (R. 27, 47).  She is able, however, to load and empty the dishwasher and dust the furniture in her home.  (R. 47, 50).  Plaintiff alleges difficulty climbing stairs from the basement of her home, where her washing machine is located, to the ground level and is often out of breath when she does.  (R. 47-48).  She launders her clothes with the assistance of her son who carries the basket(s) full of clothes up to and down from her basement.

(R. 47).

Plaintiff can walk only one block before she must stop, because of pain in her legs and shortness of breath. (R. 49). She can stand or sit for one hour, *see* (R. 49), write for ten to fifteen minutes, *see* (R. 28), drive short distances, because of numbness in her right leg and pain in her right foot, alternating arms to steer, inasmuch as her arms, wrists, and elbows tire. (R. 28-29, 37-38). Although Plaintiff can lift her arms above her head, she cannot place them behind her back. (R. 29). She washes her own hair, but her husband must wash her back, *see* (R. 29, 51), and helps her dress, because she has difficulty buttoning and fastening her clothing. (R. 29-30). Plaintiff has no hobbies and spends her day watching television. (R. 37-38). She does not read, because it triggers headaches; also, she has with her recall and reading comprehension. (R. 37-38, 52). She is able to prepare her own meals. (R. 37).

C.    Vocational Testimony

At the October 20, 2010 administrative hearing, VE Anderson designated Plaintiff's previous sander and fabrication positions as unskilled[4] and light work[5]. (R. 53). The ALJ asked VE Anderson to consider if a hypothetical person who is forty-five years old, with a high school education, limited to unskilled work, right hand dominant with the strength of twenty and ten in the right hand and ten and less than ten in the left hand; can stand or walk for up to six hours in an eight-hour day; lift and carry up to twenty pounds occasionally and ten pounds frequently; occasionally reach bilaterally overhead; occasionally push and pull with her upper extremities; frequently push and pull with her lower extremities; occasionally perform bilateral handling and fingering; and must avoid vibrations,

_____

[4]Unskilled work requires "little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . .[a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. §404.1568(a).

[5]"Light work involves lifting no more that 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §404.1567(b).

could perform Plaintiff's past relevant work. (R. 53-54). VE Anderson opined that while such an individual could not perform Plaintiff's prior positions such an individual could perform unskilled work as a bakery worker, conveyor line (416 positions in the local labor market, 2,300 regionally and 57,000 nationally); usher (400 positions in the local labor market, 2,300 regionally and 58,000 nationally); and surveillance system monitor (540 positions in the local labor market, 3,300 regionally and 83,000 nationally).[6] (R. 54-55).

Plaintiff's counsel asked VE Anderson whether the positions he identified could be performed with a sit/stand option. (R. 55). VE Anderson responded that, based upon his personal observations, the positions he identified could be performed with a sit/stand option. *Id*. The VE further opined that inability to make judgments on simple work related decisions would impose little impact on the simple unskilled work previously identified. (R. 56-57). Next, Plaintiff's counsel asked the VE to consider a hypothetical individual with marked limitations in the ability to respond appropriately to work pressures in a usual work setting and to respond appropriately to changes in a routine work setting. (R. 57). The VE responded that an individual's inability to respond to changes in a routine work setting would erode more than ninety-five percent of the positions identified, because work pressures are inherent in every job. (R. 57-58). Finally, Plaintiff's counsel inquired whether a hypothetical individual with a GAF[7] score of 50[8] could perform the positions identified. (R. 58). The VE opined that a GAF score is a subjective evaluation and a GAF score of 50 would not erode the positions he identified. (R. 58-59).

---

[6] VE Anderson testified that the local labor market is comprised of a ten county area which includes York, Lancaster, Dauphin and Berks counties; the regional area consists of the entire Commonwealth of Pennsylvania. (R. 55).

[7] Global Assessment of Functioning is "the clinician's judgment of the individual's overall level of functioning." *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* at 32 (2000) ("*DSM-IV-TR*").

[8] A GAF score in the range of 41-50 corresponds to "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." *DSM-IV-TR* at 34.

# III. THE ALJ's FINDINGS

After the October 1, 2010, administrative hearing, the ALJ issued the following relevant

findings:

3. [Plaintiff] has the following severe impairments: bilateral carpal and cubital tunnel syndrome, diabetes, learning disability, borderline intellectual functioning, depression and anxiety (20 C.F.R. 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except that she is limited to lifting/carrying with the dominant right hand 20 pounds occasionally and 10 pounds frequently; lifting/carrying with the left hand 20 pounds occasionally and 10 pounds frequently; standing/walking 6 hours; sitting 6 hours; must alternate sitting and standing; limited to occasional overhead reaching; occasional pushing/pulling with the upper extremities; frequent pushing/pulling with the lower extremities; occasional handling, fingering, and feeling; no exposure to vibrations; and is limited to unskilled work.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

7. [Plaintiff] was born on October 7, 1965 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because

[Plaintiff's] past relevant work is unskilled (20 CFR 404.1568).

10.    Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a)).

11.    [Plaintiff] has not been under a disability, as defined in the Social Security Act, from September 1, 2008 through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 12-18).

## IV.    DISCUSSION

A.    Standard of Judicial Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla of evidence, but may be less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the Court should affirm the ALJ's findings of fact, if they are supported by substantial evidence even when the Court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). On the other hand, the Commissioner's legal conclusions are subject to plenary review. *Schaudeck*, 181 F.3d at 431.

B.    Burden of Proof in Disability Proceedings

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (a) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, App. 1; or (b) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423 (d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. Under the second method, Plaintiff must initially demonstrate that a medically determinable disability prevents her from returning to her past employment. *See Brown v. Bowen*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given her age, education, and work experience. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.    Review of the Administrative Law Judge's Decision

The ALJ determined that Plaintiff was not disabled at any time through the date of his decision and, therefore, denied her disability benefits. (R. 21). Plaintiff asserts that the ALJ: (1) failed to properly consider whether her impairments met Listing 12.05(C), (2) improperly assessed her credibility and (3) failed to present a hypothetical to the VE that encompassed all of her

limitations. *Plaintiff's Brief and Statement of Issues in Support of Request for Review* ("Pl.'s Br.") at 7-21. The Commissioner requests that the court affirm her properly supported final ruling. *Defendant's Response to Request for Review by Plaintiff* ("Def.'s Br.") at 5-25.

1. The ALJ Failed to Assess Whether Plaintiff Meets Listing 12.05(C)

Plaintiff argues that the ALJ failed to consider whether she met all of the criterion for Listing 12.05., specifically 12.05(C). Pl.'s Br. at 19-21. This court finds that the Commissioner did not consider the specific requirements of 12.05(C) in evaluating whether or not Plaintiff's mental health impairment met a listing.

The ALJ's step three analysis of Plaintiff's mental health impairment, in relevant part, is as follows:

> [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, 12.05 or 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, [Plaintiff] has mild restriction. [Plaintiff] is able to take care of personal needs, drive, and perform light household cooking and cleaning.
>
> In social functioning, [Plaintiff] has mild difficulties. [Plaintiff] reported no difficulties getting along with others. She related adequately in clinical settings and at the hearing. She has good family relationships.

With regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties. [Plaintiff] has difficulties with detailed or complex instructions. She retains sufficient ability to understand, remember and carry out simple tasks and routines.

As for episodes of decompensation, [Plaintiff] has experienced no episode of decompensation, which have been of extended duration.

Because [Plaintiff's] mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(R. 12-13). Inasmuch as, the ALJ's step three analysis of Plaintiff's mental health impairment failed to consider Listing 12.05(C) and record evidence demonstrates that Plaintiff could likely meet Listing 12.05(C), remand is appropriate.

The Third Circuit identified explicit criterion a plaintiff must meet to satisfy Listing 12.05(C):

To meet the requirements of § 12.05(C) [Plaintiff] must i) have a valid verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the mental retardation was initially manifested during the developmental period (before age 22).

*Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003). The ALJ failed to assess these three distinct criterion.

Plaintiff argues that she meets the first criterion of Listing 12.05(C) based upon her verbal comprehension index score of 70. On July 28, 2009, Dr. Robert Carey completed a clinical psychological disability evaluation, intellectual evaluation and memory evaluation of Plaintiff. (R.

-10-

365-75).  Also, he administered the Wechsler Adult Intelligence Scale-IV ("Wechsler Series Test") to assess Plaintiff's intellectual functioning.   (R. 370).   Plaintiff submits that her verbal comprehension index score of 70, the lowest IQ score she received on the Wechsler Series Test, should be used to determine whether she meets Listing 12.05(C).[9]  To support her assertion Plaintiff cites 20 C.F.R. Pt. 404, Subpt. P, Appx. I §12.00 (D)(6)(c)(Intelligence tests) which states, "... In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05."  The Commissioner argues that Plaintiff's full scale IQ score should be considered, because the Fourth Edition of the Wechsler Series Test does not generate separate verbal, performance and full scale scores.  Def.'s Br. at 23.  The Commissioner further contends that Plaintiff cannot rely upon her verbal comprehension index score, because said score is not identical to a verbal IQ score; thus, it should not be used for analysis under 12.05(C).  Def.'s Br. at 23-24.

The Commissioner's arguments regarding the results of Plaintiff's Wechsler Series Test were not reasons relied upon by the ALJ in his decision to discredit Plaintiff's low verbal comprehension index score of 70.  *See* (R. 16-17). The ALJ discussed the results of Plaintiff's Wechsler Series Test in his decision and he did not challenge the validity of Plaintiff's scores.  *See* (R. 16).    It is impermissible for the court to supply its own reasons to support an ALJ's decision; the court must limit its analysis to the explanations actually provided for in his decision.   *See Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).    Thus, the court shall not consider the Commissioner's assertions, which the ALJ did not advance in his decision.  Furthermore, contrary

---

[9]Plaintiff achieved a full scale IQ score of 79 and a verbal comprehension index score of 70.  *See* (R. 370).  Dr. Carey opined that a verbal comprehension index score of 70 is often most indicative of an individual's true intellectual functioning when there is a significant difference between the various index scores as evidenced in Plaintiff's Wechsler Series Test results.  *See* (R. 371).

to the Commissioner's assertions, guidance provided by the Wechsler Series Test administrators specifically indicates that the VIQ (verbal IQ score) on the prior Wechsler Series Test is now the functional equivalent to the VCI (verbal comprehension index score) on the Wechsler Adult Intelligence Scale-IV test. The Frequently Asked Questions section of the Wechsler Adult Intelligence Scale-IV provides insight on the use of terminology:

> Q: To meet my state's cognitive requirements for a diagnosis of intellectual disability (formally referred to as mental retardation), the VIQ, PIQ and FISQ scores must all be below 70 points. How do I do this with WAIS-IV, which no longer has the VIQ and PIQ composite scores?
>
> A: States and other regulatory bodies may update their terminology in the future. In the meantime, there is a statement on page 5 of the WAIS-IV Administration and Scoring Manual that was designed to address this situation: 'The terms VCI and PRI should be substituted for the terms VIQ and PIQ in clinical decision-making and other situations where VIQ and PIQ were previously used.'[10]

Thus, Plaintiff's verbal comprehension index score of 70 can be relied upon to meet Listing 12.05(C). *See Markle*, 324 F.3d at 187.

Plaintiff contends that she meets the third criterion of Listing 12.05(C), based upon her severe mental and physical impairments. Pl's. Br. at 20-21. At step two of the sequential evaluation process, the ALJ found Plaintiff to have severe bilateral carpal and cubital tunnel syndrome, diabetes, depression, anxiety, learning disability and borderline intellectual functioning. (R. 12). Plaintiff's residual functional capacity ("RFC") limits her to unskilled, light work with a sit/stand option, occasional overhead reaching, pushing/pulling, handling, fingering and feeling and she must avoid

---

[10] *See* http://www.pearsonassessments.com/hai/images/products/wais-iv/WAIS-IV_FAQ-final.pdf., at p. 5. The court is unable to find cases in this circuit that acknowledge that the verbal comprehension index score used in the Wechsler Adult Intelligence Scale-IV test is the functional equivalent of the verbal IQ score that was used in the Third Edition of the Wechsler Series Test. However, at least one other district court has acknowledged this matter. *See e.g. Smith v. Astrue*, 2012 WL 2990064 *3 (S.D.Ill. 2012).

exposure to vibrations. (R. 13). Thus, Plaintiff's mental and physical impairments may likely satisfy the second criterion of Listing 12.05(C). *See Markle*, 324 F.3d at 187-188.

To satisfy the third criterion for Listing 12.05(C), Plaintiff must demonstrate that her mental functioning limitation existed prior to the age of 22 years old. Plaintiff, born on October 7, 1965, graduated high school in 1984 at the age of 19 from a special education program. (R. 14, 36, 149, 179, 368). Thus, substantial evidence indicates that Plaintiff's mental functioning impairment manifested before the age of 22. *See Williams v. Sullivan*, 970 F.2d 1178, 1885 (3d Cir. 1992).

This court recommends remand of this matter to the Commissioner for further review, because, based upon the record, it is not clear that the ALJ even considered whether Plaintiff met Listing 12.05(C), which her verbal comprehension index score of 70 and her mental and physical impairments may satisfy. Upon remand, the ALJ shall consider and state explicitly whether Plaintiff meets Listing 12.05(C), based upon Dr. Cary's July 28, 2009 medical findings.

2. The ALJ Failed to Properly Evaluate Plaintiff's Credibility

Plaintiff asserts that the ALJ improperly evaluated her credibility based upon her inability to afford medical treatment. Pl.'s Br. at 17-19. The Commissioner responds that the ALJ's credibility assessment is supported by substantial evidence. Def.'s Br.17-19.

In discussing Plaintiff's credibility, the ALJ stated:

> [Plaintiff's] credibility is negatively affected by her lack of treatment. The undersigned is sympathetic to her concern that medical treatment is expensive without insurance. Nonetheless, when she chooses not to obtain treatment at all, this is indicative of her priorities and suggests her symptoms are not as severe as alleged. Further, the record does not support greater limitations despite her lack of medical treatment.

(R. 15). The ALJ's improper inferences regarding Plaintiff's lack of medical treatment contravene

Social Security Ruling ("SSR") 96-7p.  The Third Circuit has noted that, pursuant to SSR 96-7p:

> [the ALJ] must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case of record, that may explain infrequent or irregular medical treatment.

*Newell v. Comm'r of Soc. Sec. Admin.*, 347 F.3d 541, 547 (3d Cir. 2003).    Plaintiff testified that her medical treatment has been sparse and intermittent because of her lack of employment and health insurance coverage.  (R. 39-40).  She testified that, after September 2008, COBRA benefits allowed her to have affordable medical treatment for only two or three months.  (R. 40-41).  Thereafter, Plaintiff sought medical assistance through the Pennsylvania Department of Public Welfare; but, her application was denied because of her husband's Supplemental Security Income ("SSI") and partial VA benefits.  (R. 24, 42, 46).

The ALJ summarily dismissed Plaintiff's articulated reasons for her lack of medical treatment and impermissibly questioned "her priorities" as his basis for finding her less than credible, in contravention of SSR 96-7p.  *See* (R. 15).  The record indicates that Plaintiff's income during the relevant period was, in fact, low, which supports her claim that she could not afford medical treatment.  *See* (R. 127).  Plaintiff testified that if, she could have afforded medical insurance, she have would have routinely sought medical treatment for her impairments.  (R. 42).  To the extent that the ALJ questioned Plaintiff's "priorities," the court notes that Plaintiff functions with borderline intelligence and does not manage her own finances.  *See* (R. 28, 50).  Nevertheless, an ALJ should neither penalize nor berate an indigent plaintiff.  Upon remand, the ALJ shall reassess Plaintiff's credibility regarding her mental and physical impairments in view of SSR 96-7p.

### 3. The ALJ Failed to Present a Complete Hypothetical to the VE[11]

Plaintiff asserts that the ALJ's hypothetical question did not encompass all of her mental and physical limitations. Pl.'s Br. at 8-17. Pl.'s Reply at 1-6. The Commissioner contends that the ALJ accurately conveyed all of Plaintiff's physical and mental impairments, including her borderline intellectual functioning, memory impairment, mental health problems and hand numbness in his hypothetical question to the VE. Def.'s Br. at 5-16. The Commissioner's argument is flawed.

During the administrative hearing, the ALJ presented the following hypothetical to the VE:

> ALJ:    Okay.    Will you assume please a hypothetical individual who is 45 years old, and who has a high school education?  This person can stand or walk up to six hours in an eight-hour day.  Sit up to six hours. Must alternate sitting and standing.  Can lift and carry up to 20 pounds  occasionally, 10 pounds frequently. Overhead bilateral reaching is limited to occasional. Pushing and pulling with the upper and – upper extremity it limited to occasional.  Push/pull with the lower is limited to frequent.  And do you need anything more than that, or do you need – for push/pull do you need weight limits?

> VE:     I think that's satisfactory, Your Honor.

> ALJ:    Okay.  This individual is right hand dominant.  This individual is limited in the right hand, let's see, that – those strength limitations that I gave you are for the right hand, 20 and 10.  For the left [hand] it's ten and less than ten.  Do you understand?

> VE:     I do.

> ALJ:    Do you understand, Mr. Krosher?

---

[11] The court will not address Plaintiff's argument that the ALJ failed to include her inability to complete a normal workday and maintain employment as a result of her GAF score of 50 in  his RFC and hypothetic to the VE.  *See* Pl.'s Br. at 13-14.  The court notes that, at the administrative hearing, Plaintiff's counsel questioned the VE regarding the impact of GAF score of 50 on an individual's ability to perform the simple, unskilled work the VE identified.  *See* (R. 58-59).  The VE opined that a GAF score of 50 would not greatly impact simple, unskilled work.  *See* (R. 59).

| | |
|---|---|
| ATTY: | Yes, I do. |
| ALJ: | Okay. |
| ALJ: | This hypothetical individual bilaterally is limited to handling and fingering occasionally. This person cannot be exposed to vibrations. Fingering also is limited – I said fingering already. |
| VE: | Yes. |
| ALJ: | Feeling, feeling is limited to occasional as well. |
| VE: | All right. |
| ALJ: | Nonexertionally this person is limited to unskilled work. I don't understand the medical limitations regarding interaction, so I'm not going to apply any. All right. Can that hypothetical individual perform the occupation of sander, fabrication? |
| VE: | No, Your Honor. |

(R. 53-54). The VE testified that the hypothetical individual could perform unskilled work as a bakery worker, usher, and surveillance system monitor. (R. 54-55). However, the ALJ's hypothetic did not encompass all of Plaintiff's mental and physical limitations.

*(a) The ALJ failed to include Plaintiff's borderline intellectual functioning and memory impairment.*

Plaintiff contends that her borderline intellectual functioning and memory impairment were not included in the hypothetical posed to the VE. Pl.'s Br. at 9-11; Pl.'s Reply at 1-2. The Commissioner contends that the ALJ posed a complete hypothetic in that he limited Plaintiff to unskilled work which she "needs little or no judgment to do simple duties that can be learned on the job in a short period of time... ." Def.'s Br. at 6 (citing 20 C.F.R. § 404.1568 (a)). The court is not persuaded by the Commissioner's assertion.

At step two of the sequential evaluation process, the ALJ found that Plaintiff has a severe learning disability and borderline intellectual functioning. (R. 12). The ALJ restricted Plaintiff to "simple, unskilled work based on her cognitive, memory and mild concentration difficulties." *See* (R. 17). The Third Circuit has held that limiting a Plaintiff to "simple repetitive one, two-step tasks" does not necessarily incorporate all of the borderline aspects of an individual's intellectual functioning. *See Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). The ALJ's failure to specifically accommodate Plaintiff's borderline intellectual functioning and learning disability requires remand. Dr. Carey assessed Plaintiff with borderline intellectual functioning with a fair to poor prognosis. (R. 374). During her examination, Plaintiff demonstrated difficulty processing information presented to her verbally and recalling information at a later time. (R. 373). Plaintiff also has an extensive memory impairment. (R. 372). Dr. Carey found that her Auditory Memory, Immediate Memory and her Delayed Memory all fall significantly below the expected average range. (R. 372-73).[12] The hypothetical posed to the VE improperly omitted these limitations. *See* (R. 53-54).

*(b) The ALJ failed to include her moderate limitations in concentration, persistence or pace.*

Plaintiff asserts that the ALJ failed to include her moderate limitations in concentration, persistence or pace in the hypothetical to the VE and thus it was flawed. Pl.'s Br. at 12-13; Pl.'s Reply at 3-4. The Commissioner contends that the ALJ acknowledged Plaintiff's moderate limitations in this area and appropriately limited her to unskilled work. Def.'s Br. at 13-14. This court finds that the ALJ's hypothetical was flawed.

Although the ALJ recognized that Plaintiff has moderate difficulty in maintaining concentration, persistence or pace, *see* (R. 13), he omitted this deficit from the RFC, *see* (R. 13), and

---

[12] Dr. Carey opined that Plaintiff's memory difficulties were not fully the result of her intellectual functioning. (R. 373). Thus, this deficiency should have been specifically addressed in any hypothetic presented to the VE.

the hypothetical question to the VE. *See* (R.53-54). Judges in this district have consistently found that such an omission constitutes reversible error. *See DeBias v. Astrue*, 2012 WL 2120451, *5-*6 (E.D. Pa. June 12, 2012); *Trout v. Astrue*, 2011 WL 3652500, *16 (E.D. Pa. July 28, 2011); *Strouse v. Astrue*, 2010 WL 1047726, *6 (E.D. Pa. Mar. 19, 2010); *Weinsteiger v. Astrue*, 2010 WL 331903, *10 (E.D. Pa. Jan. 25, 2010) (citing four cases from 2004 to 2007). *But see Douglas v. Astrue*, 2011 WL 482501, *4 (E.D. Pa. Feb. 4, 2011). This result stems from the Third Circuit's decision in *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004).[13]

When Ramirez's disability claim was decided, the term "moderate" was not used in the Commissioner's regulations to describe the third of five levels of limitation in concentration, persistence or pace, instead, the corresponding term was "often." *Ramirez*, 372 F.3d at 551 (citing 20 C.F.R. § 416.920a(b)(3) (1999)); *Strouse*, 2010 WL 1047726, at *6 (explaining that the name change took place in 2000); *Weinsteiger*, 2010 WL 331903, at *10 (noting that *Ramirez* applied the old terminology). Citing *McDonald v. Astrue*, 293 Fed. Appx. 941, 946 & n.10 (3d Cir. 2008) (*non precedential*), the Commissioner argues that the difference in nomenclature between "moderate" and "often" means that *Ramirez* is inapposite. Def.'s Br. at 14-15. However, *Strouse* and *Weinsteiger* provide convincing explanations for why *McDonald* does not undermine the *Ramirez* rule as it is applied in this district. *See Strouse*, 2010 WL 1047726, at *6 (explaining that *McDonald* failed to address the change in regulatory terminology and the nomenclature change was not dispositive, because there was a lack of record support for McDonald's asserted functional limitations); *Weinsteiger*, 2010 WL 331903, at *10 & n. 3 (noting that *McDonald* is not precedential and, as

---

[13] In *Ramirez*, the Third Circuit found that the ALJ's hypothetical question to the VE was defective, because the ALJ failed to include his finding that the Plaintiff "often" experienced deficiencies of concentration, persistence or pace. 372 F.3d at 549, 554. The court specifically found that the hypothetical's inclusion of work limited to simple one or two-step tasks did not adequately account for Ramirez's pace limitation. *Id.* at 554.

explained in *Bunch v. Astrue*, 2008 WL 5055741, *5 & n.4 (E.D. Pa. Nov. 26, 2008), the change in regulatory terminology does not circumvent *Ramirez*'s requirement that hypothetical questions accurately convey the limitations the ALJ has found). Hence, this court follows this district's majority rule and finds that the ALJ committed reversible error. On remand, the ALJ shall include Plaintiff's moderate limitation in concentration, persistence or pace both in the RFC and any hypothetical question posed to the VE.

(*c*) *The ALJ failed to include Plaintiff's limitations in social functioning*.

Plaintiff challenges the VE's failure to include her moderate limitations in social functioning that were assessed by Drs. Carey and Rudnick. Pl.'s Br. at 11-12; Pl.'s Reply at 2-3. The ALJ found that Plaintiff has mild limitations in social functioning, *see* (R. 13), yet the hypothetical question posed to the VE did not include any deficits in social functioning. *See* (R. 53-54). In fact, the ALJ stated at the hearing that he did not understand the medical limitations regarding "interactions," so he omitted this restriction from the hypothetic posed to the VE. (R. 54). This court cannot determine if the ALJ disagreed with the existence of this limitation or omitted it from the hypothetic solely because he did not understand the medical findings of Drs. Carey and Rudnick regarding this limitation. In any case, the ALJ's treatment of Drs. Carey and Rudnick's assessments requires remand.

On July 28, 2009, Dr. Carey found Plaintiff to have moderate limitations in her ability to interact appropriately with the public, supervisors and her co-workers. (R. 363). On August 5, 2009, Dr. Barry Rudnick, in a Mental Residual Functional Capacity Assessment on behalf of the state agency, rated Plaintiff as moderately limited in her ability to interact appropriately with the general public, to accept instructions and to respond appropriately to criticism from supervisors. *See* (R. 392).

The ALJ explicitly rejected Dr. Carey's findings based upon Plaintiff's independent activities of daily living, social functioning with her family and ability to relate adequately in clinical settings and at the hearing. *See* (R. 16). The ALJ did not rely upon medical evidence or another medical assessment to rebut Dr. Carey's findings, but rather made his own credibility determination and used his lay opinion regarding Plaintiff's ability to function in social settings. This was an error. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Moreover, the ALJ failed to discuss Dr. Rudnick's report which supports Dr. Carey's findings. This court cannot determine whether the ALJ considered and rejected Dr. Rudnick's findings or simply failed to consider them at all. Remand is necessary so that an explicit finding can be made regarding Dr. Rudnick's report. *See Fargnoli*, 247 F.3d at 43-44.

(*d*) *The ALJ failed to include Plaintiff's hand numbness, pain and propensity to drop objects.*

Plaintiff contends that the ALJ's RFC and hypothetical failed to accommodate her bilateral hand numbness, tingling, pain and inability to grasp and hold objects. Pl.'s Br. at 14-17; Pl.'s Reply at 6. Plaintiff specifically complains that two of the three jobs the VE identified, bakery line worker[14] (DOT Code 524.687-022) and usher[15] (DOT Code 344.677-014) require an individual to grasp and

---

[14]Bakery Line Worker, Conveyor Line (DOT CODE 524.687-022)
Performs any combination of following tasks in preparation of cakes along conveyor line:

Reads production schedule or receives instructions regarding bakery products that require filling or icing. Inspects cakes moving along conveyor to detect defects and removes defective cakes from conveyor to reject bins. Positions cakes on conveyor for application of filling or icing by machine, observes filling or icing application to ensure uniform coverage, and places additional cake layers on coated layers, depending on number of cake layers in product. Observes cakes moving under automatic topping shaker and cake cutting machine to ensure uniform topping application and cutting. Smooths iced edges of cake, using spatula, and moves decorating tool over top of designated cakes to apply specified appearance. Notifies supervisor of malfunctions.

[15]Usher (DOT CODE 344.677-014)
Assists patrons at entertainment events to find seats, search for lost articles, and locate facilities, such as restrooms and telephones. Distributes programs to patrons. Assists other workers to change advertising display.

hold items during the course of daily work performance. Pl.'s Br. at 16-17.

At step two of his decision, the ALJ found that Plaintiff has severe bilateral carpal and cubital tunnel syndrome. *See* (R. 12). He noted that Plaintiff has pain, numbness and weakness in her upper extremities due to nerve damage; her condition is worse in the left wrist, forearm and elbow. *See* (R. 14). The ALJ discussed Plaintiff's difficulty lifting and grasping objects and the fact that she often drops items, because of numbness in her fingers. *See id*. The ALJ limited Plaintiff's RFC to only occasional handling, fingering and feeling. *See* (R. 13). However, it is not clear that the ALJ's RFC and hypothetic fully accommodated Plaintiff's severe bilateral carpal and cubital tunnel syndrome and propensity to drop objects. Moreover, the VE was not presented a hypothetic that specifically addressed Plaintiff's tendency to drop items due to pain and numbness in her hands. *See* (R. 53-54). Upon remand, the ALJ shall render a hypothetical question to the VE that encompasses all of Plaintiff's limitations, including her handling, fingering, feeling limitations and propensity to drop items due to pain and numbness in her hands. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *see also Rutherford v. Barnhart*, 399 F.3d 546, 553-54 (3d Cir. 2005).

## V. CONCLUSION

After a thorough review of the record, this court finds that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, I make the following:

# RECOMMENDATION

AND NOW, this 18th day of November, 2013, I respectfully recommend that:

1.     The Report and Recommendation be APPROVED and ADOPTED;

2.     The Plaintiff's Request for Review be GRANTED in part and DENIED in part; and

3.     The matter be REMANDED to the Commissioner of Social Security Administration to allow the Administrative Law Judge (ALJ) to conduct additional proceedings consistent with the Report and Recommendation. On remand, the ALJ shall:(a) re-assess Dr. Carey's July 28, 2009 opinion to determine whether Plaintiff meets Listing 12.05(C); (b) consider Dr. Rudnick's opinion regarding Plaintiff's functional limitations; (c) re-assess Plaintiff's credibility; (d) reconsider Plaintiff's residual functional capacity; and (e) pose hypothetical questions to the vocational expert which take into account all of Plaintiff's credible limitations, including her borderline intellectual functioning, memory impairment, limitations in social functioning, concentration, persistence or pace, hand numbness, pain and propensity to drop objects.

It be so ORDERED.


*/s/ Carol Sandra Moore Wells*
CAROL SANDRA MOORE WELLS
CHIEF UNITED STATES MAGISTRATE JUDGE